Filed 4/25/22  P. v. Trotter CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089578 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F03192) |
| v. | OPINION ON TRANSFER |
| ANDY OTIS TROTTER, | |
| Defendant and Appellant. | |

Defendant Andy Otis Trotter appeals the trial court's denial of his petition for resentencing under Penal Code section 1170.95, arguing the trial court erred in finding he was ineligible for relief as a matter of law, based on his attempted murder convictions. (Statutory section citations that follow are to the Penal Code.)  Defendant also contends we must remand the matter to give the trial court the opportunity to strike the two 20-year firearm enhancements.  In our original unpublished decision, we disagreed and affirmed

1

the trial court's order. Defendant appealed this denial to the California Supreme Court, which granted his petition for review, and on January 26, 2022, transferred the matter back to us with directions to vacate the previous decision and reconsider the matter "in light of Senate Bill No. 775 (Stats. 2021, ch. 551) [(Senate Bill 775)]and *People v. Lewis* (2021) 11 Cal.5th 952 [(*Lewis*)]." Upon reconsideration, we conclude that a review of defendant's original trial record, which we previously incorporated by reference, demonstrates he is ineligible for relief as a matter of law. Accordingly, we affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

Defendant and his codefendant, known gang members, were embroiled in an ongoing war with a rival gang. One night, defendants drove down a street and fired shots at people outside a house known to be a hangout for the rival gang. (*People v. Trotter* (Jan. 15, 2009, No. C055472) [nonpub. opn.].) A jury found defendant guilty of two counts of attempted murder (§§ 664/187), discharging a firearm from a vehicle (§ 12034, subd. (c)), and shooting at an occupied vehicle (§ 246). As to the attempted murder counts, the jury found true the allegations that they were committed willfully, deliberately, and with premeditation. The jury also found gang and firearm enhancements true (§§ 186.22, subd. (b)(1), 12022.53, subd. (c)). The trial court sentenced defendant to an aggregate prison term of 30 years to life plus 40 years, which included two 20-year consecutive terms imposed on the firearm enhancement. (*People v. Trotter* (Jan. 15, 2009, No. C055472) [nonpub. opn.].) We affirmed the judgment in 2009, and the case became final in 2009.

Defendant filed a petition for resentencing under section 1170.95. Defendant declared the prosecution proceeded "under a theory of felony murder or murder under the natural and probable consequences doctrine," he "was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences

2

doctrine," and he "could not now be convicted of 1st or 2nd degree murder." Noting defendant was convicted of two counts of attempted murder, the trial court found defendant had not shown he came within the provisions of section 1170.95 and having been convicted of attempted murder defendant was ineligible for statutory relief under section 1170.95. Accordingly, the trial court denied the petition.

DISCUSSION

I

*Relevant Law*

Senate Bill No. 1437 (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).) The bill amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2, 3.) Under new section 188, subdivision (a)(3), "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." It thus "eliminated natural and probable consequences liability for murder and limited the scope of the felony-murder rule." (*Lewis, supra,* 11 Cal.5th at p. 957; Stats. 2018, ch. 1015, § 2.) The bill also added new section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.)

At the time the trial court considered defendant's petition, section 1170.95 did not expressly permit a petition for resentencing on convictions for attempted murder. (§ 1170.95, former subd. (a).) However, Senate Bill 775, which was signed into law on

3

October 5, 2021, amended section 1170.95 to read, in pertinent part: "A person convicted of . . . attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (Stats. 2021, ch. 551, § 2.)

Senate Bill 775 also amended section 1170.95 to codify the holding in *Lewis, supra,* 11 Cal.5th 952 that a petitioner has the right to appointment of counsel, if requested, prior to the court making the prima facie finding. (Cal. Const., art. IV, § 8; Stats. 2021, ch. 551, § 1(b); § 1170.95, subd. (b)(3); *Lewis,* at pp. 960-962, 966.) In addition, Senate Bill 775 added requirements to the process for evaluating a petitioner's prima facie eligibility for relief: after the parties have had the opportunity to submit briefing, the trial court must hold a prima facie hearing to determine whether the petitioner has made a prima facie case for relief; and, if the trial court declines to issue an order to show cause, it must provide a statement fully setting forth its reasons for doing so. (§ 1170.95, subd. (c).)

*Lewis* also held that once the court has appointed counsel and received briefing from the parties, it may rely on the record of conviction in determining whether that single prima facie showing has been made. (*Lewis, supra*, 11 Cal.5th at pp. 970-972.) Although a court should not reject a petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing (*id.* at p. 971), the court need not credit factual assertions that are untrue as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) Thus, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971; *Drayton*, at p. 979.) The record of conviction includes jury instructions. (*People*

4

*v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939 (*Soto*).)

Senate Bill 775 was passed as nonurgency legislation during the regular session and became effective on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c)(1); see also *People v. Camba* (1996) 50 Cal.App.4th 857, 862.) The statute applies to acts predating its enactment as either an ameliorative statute under *In re Estrada* (1965) 63 Cal.2d 740, 748 or a clarification of law (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243; *People v. Lee* (2018) 24 Cal.App.5th 50, 57). In either case, defendant is entitled to the benefit of the new provisions to section 1170.95.

II

*Application to These Proceedings*

Following transfer from the California Supreme Court, defendant argues that despite the fact the jury was not instructed on the natural and probable consequences theory of attempted murder, the instructions as a whole permitted the jury to convict him under an imputed malice theory. Specifically, he contends that the direct aiding and abetting instruction given, which included the language that an aider and abettor is equally guilty as the direct perpetrator, combined with the prosecutor's argument could have confused the jury as to determining defendant's culpability. The People disagree, arguing that remand for further proceedings is unnecessary because defendant is ineligible for relief as a matter of law given that he was not prosecuted under the natural and probable consequences doctrine.

Defendant was not prosecuted for attempted murder under a natural and probable consequences theory; the amended information does not make such an allegation and the jury was not instructed on a natural and probable consequences theory. Rather, the information alleged the attempted murder was committed willfully, deliberately, and with premeditation, and the jury was so instructed and so found. This instruction informs the

5

jury that "[t]he defendant acted *willfully* if he intended to kill when he acted." That is, to find defendant guilty of willful, premeditated and deliberate attempted murder requires the jury had to find defendant had the intent to kill. The jury was also instructed on direct aiding and abetting, and that the required mental state for murder was either express or implied malice. These instructions informed the jury someone aids and abets a crime if he knows the perpetrator's criminal purpose and specifically intends to aid, facilitate, promote, or encourage the commission of that crime, here murder. Under these instructions to find defendant guilty of attempted murder, it was required to find " 'that the aider and abettor . . . [knew] and share[d] the murderous intent of the actual perpetrator.' " (*Soto*, *supra*, 51 Cal.App.5th at p. 1058, review granted.) Thus, under the instructions given, the jury necessarily found defendant acted with the intent to commit murder or aided and abetted his codefendant with the intent to commit murder, and acted with malice aforethought. That is, the jury made precisely the same finding that it would now be required to make to convict defendant of attempted murder.

Contrary to defendant's claim, the jury instructions in this case demonstrate that defendant was not and could not have been convicted of attempted murder under the natural and probable consequences doctrine. This is so because the jurors were not provided any instruction on which they could have found defendant guilty of attempted murder under that doctrine. Rather, under the instructions given, the jury necessarily found defendant culpable for the attempted murders based on his own actions and mental state. (See *Soto, supra,* 51 Cal.App.5th at p. 1055, review granted.) Part of the legislative intent animating Senate Bill 1437, as indicated in the uncodified statutory findings and declarations, was to ensure that punishment was commensurate with an individual's culpability and premised upon that individual's "own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1(g); *People v. Alaybue* (2020) 51 Cal.App.5th 207, 213.) The Legislature recognized a need to "more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1(b), see *id*.

6

§ 1(d).)  Imposing liability on an individual who actually intends a homicide does not implicate these concerns or run afoul of these purposes.  In this situation, the individual has the mens rea and culpability for murder.  Punishment for attempted murder is commensurate with that culpability.

The record on appeal shows that defendant was not prosecuted on the natural and probable consequences doctrine, and thus, was not tried on a theory to which the amendments of Senate Bill 1437 could arguably apply.  (§§ 664/189, subd. (e)(1), 1170.95, subd. (a)(3); *Lewis, supra*, 11 Cal.5th at p. 971.)  Nor was the jury instructed on any such theory.  Summary denial of defendant's petition was appropriate under these circumstances.  (See *People v. Daniels* (2020) 57 Cal.App.5th 666, 676-677 [summary denial of 1170.95 petition appropriate given failure to instruct on natural and probable consequences doctrine].)

III

*Senate Bill No. 620*

Defendant contends the matter must be remanded to the trial court to allow it to exercise its discretion to strike the section 12022.53, subdivision (c) firearm enhancements pursuant to Senate Bill No. 620 (Stats. 2018, ch. 682) (Senate Bill 620).  Defendant acknowledges the amendment does not create an independent right to resentencing for final cases, but applies to "any resentencing that may occur pursuant to any other law."  Relying on this language, he argues the appellant is before the court pursuant to his petition for resentencing under section 1170.95; therefore, the trial court was entitled to consider exercising its Senate Bill 620 discretion.

When defendant "was originally sentenced in 2009, the trial court had no discretion to strike or dismiss a firearm use enhancement.  [Citation.]  However, Senate Bill 620 amended the statute, effective January 1, 2018, to give the trial court discretion, in limited circumstances, pursuant to section 1385, to strike a firearm enhancement in the

interest of justice. [Citation.] Subdivision (h) of section 12022.53 now provides, 'The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law.' [Citation.]" (*People v. Johnson* (2019) 32 Cal.App.5th 938, 941.) This provision extends the benefits of Senate Bill 620 to defendants who have exhausted their rights to appeal and for whom a judgment of conviction has been entered but who have obtained collateral relief by way of a state or federal habeas proceeding or other post judgment motions. (*Id.* at p. 942; see also *People v. Arredondo* (2018) 21 Cal.App.5th 493, 507.)

Contrary to defendant's claim, he was not before the court for resentencing. The statute itself is explicit that the sentence is not recalled by virtue of the filing of the petition. Rather, it is only after the court has determined the petitioner made a prima facie showing that petitioner falls within the provisions of the statute and is entitled to relief (§ 1170.95, subd. (c)), and the prosecution has failed to carry its burden of proving the petitioner is ineligible for resentencing (*id*., subd. (d)(3)), that the murder conviction may be vacated and the sentence recalled (*ibid*.). As above, defendant did not meet the initial threshold showing he was entitled to relief, as he was not convicted under a natural and probable consequences theory. Filing a petition seeking relief to which you are not entitled does not reopen one's case for purposes of resentencing. Thus, defendant's petition for resentencing under section 1170.95 did not "extend the date on which his judgment became final for purposes of Senate Bill 620 because, although he sought it, [defendant] did not 'obtain[ ] collateral relief' " by virtue of the petition. (*People v. Johnson, supra,* 32 Cal.App.5th at p. 942.) Because he did not obtain collateral relief, appellant was not eligible for "resentencing . . . pursuant to any other law" (§ 12022.53, subd. (h)), and section 12022.53, subdivision (h), as amended by Senate Bill 620, does not apply.

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed and the judgment is affirmed.

                                        _____

                                        HULL, Acting P. J.

We concur:

_____

DUARTE, J.

_____

RENNER, J.